## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RESTORA HEALTHCARE HOLDINGS, LLC, *et al.*,[1] | Case No. 14-10367 (PJW) |
| | (Joint Administration Requested) |
| Debtors. | Related Docket No. 11, 48 |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION, (IV) STIPULATING TO THE VALIDITY, ENFORCEABILITY AND NON-AVOIDABILITY OF CERTAIN PRE-PETITION LIENS, (V) SCHEDULING FINAL HEARING AND (VI) GRANTING RELATED RELIEF

Upon the motion, dated February 24, 2014 (the "Motion"), of Restora Healthcare Holdings, LLC ("Restora Holdings"), Restora Hospital of Mesa, LLC ("Restora Mesa") and Restora Hospital of Sun City, LLC ("Restora Sun City"), as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Case"), for interim and final orders under sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedures for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), seeking, *inter alia*:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Restora Healthcare Holdings, LLC (2837); Restora Hospital of Mesa, LLC (8773); and Restora Hospital of Sun City, LLC (1028). The mailing address for the Debtors, solely for purposes of notices and communications, is 2550 Northwinds Parkway, Suite 160, Alpharetta, Georgia 30009.

(a)    authorization for the Debtors to obtain postpetition financing (collectively, the "Postpetition Financing" or the "DIP Facility") up to a maximum outstanding principal amount of $7.0 million in accordance with, (a) prior to entry of the Final Order (as defined below), the Debtor-In-Possession Financing Term Sheet among Restora Mesa and Restora Sun City, as borrowers, Restora Holdings, as guarantor and Healthcare Finance Group, LLC ("HFG") and its assigns, as lender (the "Lender") and administrative agent (the "Agent" and together with the Lender, the "Lender Parties"), substantially in the form annexed to the Motion as Exhibit A (the "DIP Term Sheet"),[2] and (b) following entry of the Final Order, the Debtor-In-Possession Loan and Security Agreement with terms consistent with the DIP Term Sheet and to be agreed upon among Restora Mesa and Restora Sun City, as borrowers, Restora Holdings, as guarantor and the Lender Parties (the "DIP Loan Agreement") together with such other documents and agreements required by the Lender Parties (the "DIP Loan Documents");

(b)    authorization for the Debtors to obtain from the Lenders on the Initial Funding Date and from time to time thereafter pending the Final Hearing (as defined below) revolving advances ("Revolving Loans") in amounts not to exceed a maximum outstanding principal amount of $4.0 million (the "Interim Amount") in accordance with the DIP Term Sheet and this Interim Order, which Interim Amount includes the amount of Existing Revolving Debt (as defined below) assumed by the Debtors as Lender Debt in accordance with the DIP Term Sheet and this Interim Order;

(c)    authorization for the Debtors to assume immediately the Existing Revolving Debt as an obligation under the Postpetition Financing and to deem all outstanding Existing Revolving Debt including, without limitation, all principal, interest, fees and other expenses to constitute Lender Debt that is valid, binding, and enforceable against the Debtors without further action by the Debtors or the Lender Parties;

(d)    authorization for the Debtors to obtain from the Lenders upon entry of the Final Order, revolving advances in amounts not to exceed a maximum outstanding principal amount of $7.0 million (the "Total Commitment") in accordance with the DIP Loan Agreement, the Loan Documents and the Final Order which Total Commitment includes the amount of Existing Revolving Debt assumed by the Debtors as Lender Debt in accordance with the DIP Term Sheet and this Interim Order;

(e)    authorization for the Debtors to execute and deliver the DIP Term Sheet, the DIP Loan Agreement and the Loan Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(f)    authorization for the Debtors to grant to the Lender Parties assurances for the full and timely payment of the Lender Debt by granting to the Lender Parties (i) pursuant to section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim (a "Superpriority Administrative Expense Claim") having priority over

---

[2]    Capitalized terms not otherwise defined in this Interim Order shall have the definitions ascribed to them in the DIP Term Sheet.

any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 503(b) and 507(b) of the Bankruptcy Code; and (ii) pursuant to section 364(c)(2), (3) and (d) of the Bankruptcy Code, liens on, and security interests in, any and all of the Collateral (as defined below), subject only to the Senior Liens (as defined below);

(g)    authorization for the Debtors to use the Prepetition Collateral (as defined below), including the Cash Collateral (as defined below) and approving the grant of adequate protection to the Existing Term Lender Parties (as defined below) as provided herein;

(h)    scheduling, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the Interim Order, among other things, authorizing the Debtors, on an interim basis, to borrow the Interim Amount under this Interim Order and the DIP Term Sheet; and

(i)    scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") on the Motion to consider entry of a final order (the "Final Order") authorizing and approving, on a final basis, the Postpetition Financing, and establishing notice procedures in respect of the Final Hearing.

The Debtors having requested in the Motion that pending the Final Hearing on the Motion, a hearing be scheduled on an expedited basis to consider entry of this Interim Order; and notice of such expedited hearing having been given to (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' twenty largest unsecured creditors on a consolidated basis; (c) counsel to the Existing Lender Parties; (d) counsel to the DIP Lender Parties; (e) Wells Fargo Bank, N.A., (f) counsel to the Debtors' landlords; (g) all applicable health regulatory agencies and taxing authorities; (h) the United States Attorney's Office for the District of Delaware; (i) the Internal Revenue Service; (j) all known parties that may be asserting a lien against the Collateral; and it appearing that on the record made in the Case and after considering the Debtors' immediate need for interim financing, no other or further notice need be given; and the Lender Parties having agreed to provide the Postpetition Financing in accordance with the DIP Term Sheet and this Interim Order.

NOW, THEREFORE, upon the Motion and the record of the Interim Hearing held before me on February 26, 2014; and after due deliberation and good and sufficient cause appearing therefor, the Court hereby makes the following findings of fact and conclusions of law:

Based upon the record presented to the Court, it appears that:

A.      Filing.  On February 24, 2014 (the "Filing Date"), each of the Debtors filed a voluntary petition for reorganization in this Court under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      Debtors' Stipulations.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 27 hereof), the Debtors admit, stipulate and agree that:

1.      Prior to the Filing Date, Restora Mesa and Restora Sun City, as borrowers, Restora Holdings, as guarantor and HFG and its affiliates, as revolving lender and term lender, and HFG, as agent (collectively, in such capacities, the "Existing Lender Parties"; HFG as term lender and agent, the "Existing Term Lender Parties") entered into that certain Revolving and Term Loan and Security Agreement dated as of June 29, 2012 (as amended, modified and supplemented from time to time, including the schedules and exhibits thereto, the "Existing Loan Agreement") and related agreements, documents and instruments delivered in connection therewith (collectively, together with the Existing Loan Agreement, the "Existing Loan Documents"), pursuant to which, among other things, the Existing Lender Parties loaned money or extended other financial accommodations to the Debtors.

2.      Pursuant to the Existing Loan Documents, the Debtors granted the Existing Lender Parties, a first-priority lien on and security interest in substantially all of the Debtors' assets including, but not limited to, all of the Debtors' receivables, deposit accounts, cash, records, general intangibles, machinery, equipment, fixtures, personal property, inventory, contracts, investment property, equity interests and other assets of all kinds and all proceeds of all of the foregoing (collectively, as defined and specified in the Existing Loan Documents as

"Collateral", the "Prepetition Collateral"), to secure the Debtors' obligations under the Existing Loan Documents. All proceeds of the Prepetition Collateral (including cash on deposit at depository institutions as of the Filing Date, securities or other property) are "cash collateral" of the Existing Lender Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral")

3.     As of the Filing Date, the Debtors were validly indebted to the Existing Lender Parties under the Existing Loan Documents in the approximate amount of $3.0 million on account of the revolving loans under the Existing Loan Documents, plus accrued and unpaid interest, fees and expenses including professional fees and expenses incurred under or in connection with the Existing Loan Documents (the "Existing Revolving Debt") and $2.6 million plus accrued and unpaid interest, fees and expenses including professional fees and expenses incurred under or in connection with the Existing Loan Documents (the "Existing Term Debt" and together with the Existing Revolving Debt, the "Existing Debt"), and the Debtors do not have any counterclaim, setoff, defense or objection against or relating to the Existing Debt. No portion of the Existing Debt is subject to avoidance, recharacterization, recovery, disallowance or subordination pursuant to the Bankruptcy Code (including, but not limited to, section 502(d) thereof) or applicable non-bankruptcy law. To the best of the Debtors' knowledge and belief, based on the value of the Prepetition Collateral (which, as of December 31, 2013, included approximately $8.6 million in uncollected receivables), the Existing Debt is oversecured as of the Filing Date.

4.     The Debtors are not aware of any facts that would support, nor are they aware of, any claims, causes of action or equitable remedies against or defenses to or abatement of the Claims and Liens asserted by the Existing Lender Parties, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

5.     The Existing Debt is fully secured by valid, binding, enforceable and properly perfected first priority liens and security interests in the Prepetition Collateral, each of which lien is not subject to avoidance, subordination, or disallowance pursuant to the Bankruptcy Code (including, but not limited to, section 502(d) thereof) or applicable non-bankruptcy law. The Debtors are unaware of any action taken by the Existing Lender Parties which would result in the avoidance, postponement, disallowance, recharacterization or subordination of the Existing Debt.

6.    The rights of the Existing Lender Parties in respect of the Existing Revolving Debt in and to certain Prepetition Collateral (including receivables, money and cash, the lockbox accounts and records and proceeds thereof) is senior to the rights of the Existing Lender Parties in respect of the Existing Term Debt in such Prepetition Collateral. The rights of the Existing Lender Parties in respect of the Existing Term Debt in and to the remaining Prepetition Collateral (including general intangibles, goods, inventory, contracts, leases, instruments, investment property, equity interests, etc. and records and proceeds thereof) is senior to the rights of the Existing Lender Parties in respect of the Existing Revolving Debt in such Prepetition Collateral.

C.    Need for Postpetition Financing and Use of Prepetition Collateral (including Cash Collateral). The Debtors have an immediate need to obtain the Postpetition Financing and to use the Prepetition Collateral including the Cash Collateral. The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the Postpetition Financing and the Debtors' use of the Prepetition Collateral (including Cash Collateral). The ability of the Debtors to pay employees, maintain business relationships with vendors and suppliers, purchase new inventory, and otherwise finance their operations is essential to the Debtors' continued viability and to the well-being of the Debtors' patients dependent on the Debtors' healthcare services. Without the Postpetition Financing and the Debtors' use of the Prepetition Collateral (including Cash Collateral), the continued orderly operation of the Debtors' healthcare services would not be possible, and serious and irreparable harm to the Debtors and their estates as well as their vulnerable patients dependent on the Debtors' healthcare services would result. The purpose of the Postpetition Financing and the Debtors' use of the Prepetition Collateral (including Cash Collateral) will thus be to preserve, maintain and enhance the going concern value of the Debtors and protect patients dependent on the Debtors' healthcare services.

D.    <u>No Credit Available on More Favorable Terms</u>.    Given the Debtors' financial condition, financing arrangements, and capital structure, as well as the uncertain timing of collections of receivables, the Debtors do not have sufficient Cash Collateral to fund their businesses and are otherwise unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.    Financing on a postpetition basis is not otherwise available without the Debtors' granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and the liens upon the Collateral pursuant to section 364(c) and (d) of the Bankruptcy Code.    The Debtors are unable to obtain the necessary postpetition financing that they need on terms more favorable than those provided by the Postpetition Financing.

E.    <u>Need to Grant Superpriority Administrative Expense Claim and Priming Liens</u>.    The Debtors are unable to obtain an adequate unsecured credit facility allowable under section 503(b)(1) of the Bankruptcy Code and must grant to the Lender Parties a Superpriority Administrative Expense Claim as contemplated by section 364(c)(1) of the Bankruptcy Code and liens as contemplated by section 364(c)(2), (c)(3) and (d) of the Bankruptcy Code.    Subject only to the Carveout (as defined below) and the Senior Liens, the Lender Parties have conditioned all loans and advances to be made under the DIP Loan Agreement upon the grant to the Lender Parties of: (a) a Superpriority Administrative Expense Claim pursuant to section 364(c)(1) of the Bankruptcy Code with priority over any and all expenses of any kind or nature whatsoever specified in sections 503(b) and 507(b) of the Bankruptcy Code; and (b) in accordance with

section 364(c)(2), (3) and (d) of the Bankruptcy Code, liens on and security interests in the Collateral.

      F.    <u>Roll-up of Prepetition Revolving Debt</u>. The Debtors have agreed to roll-up the Existing Revolving Debt as Lender Debt in accordance with the Postpetition Financing because such roll-up will avoid a disputed hearing over the Debtors' use of Cash Collateral and provide the Debtors with increased borrowing availability under the Postpetition Financing particularly over the next approximate ninety days. Absent the roll-up of the Prepetition Revolving Debt or a non-consensual use of Cash Collateral (which itself is insufficient to finance the Debtors during the Case), 100% of collections on prepetition receivables would be applied in reduction of the Prepetition Revolving Debt and, accordingly, such collections may not result in any additional availability to the Debtors until such time as the Prepetition Revolving Debt is repaid in full and the Debtors would have very limited cash with which to operate their hospitals until post-petition receivables were collected. In addition, as set forth in the DIP Term Sheet, the Lender Parties have agreed to provide up to $2.6 million (up to $2.3 million under the Interim Order) in overadvances in excess of borrowing base availability. As a result, the Debtors believe the Existing Lender Parties are oversecured on account of the Prepetition Revolving Debt and the Debtors will receive substantially increased availability in the first several weeks of the Case as a consequence of the roll-up of the Existing Revolving Debt, which liquidity is critical for the Debtors to be able to meet their operating expenses during that time period. As provided in paragraph 27 hereof, this Interim Order preserves the rights of parties in interest to investigate and, if appropriate, challenge the validity, enforceability, perfection and priority of the Existing Revolving Debt and the Existing Lender Parties' security interests in and liens on the Prepetition Collateral, including, without limitation, the roll-up of the Prepetition Revolving Debt, such that

there will not be prejudice to any party in interest as a consequence of the Debtors' immediate roll-up of the Existing Revolving Debt as Lender Debt. Based on the foregoing, the proposed roll-up of the Existing Revolving Debt under the Postpetition Financing as Lender Debt is in the best interests of the Debtors and their estates and does not adversely affect any party in interest. Nothing herein shall be construed as the Debtors' assumption of the DIP Term Sheet.

G.    DIP Facility. Pursuant to the DIP Facility, the Lender Parties have agreed to provide Revolving Loans to the Debtors in amounts not to exceed the maximum outstanding principal amount at any one time of (i) following entry of the Interim Order and prior to entry of the Final Order, $4.0 million in accordance with the DIP Term Sheet, the Budget (as defined below) and this Interim Order, and (ii) upon entry of the Final Order, $7.0 million, in accordance with the DIP Loan Agreement, the DIP Loan Documents, the Budget and the Final Order. The Lender Parties have agreed to make overadvances in excess of borrowing base availability (but not in excess of the Interim Amount prior to entry of the Final Order or in excess of the Total Commitment following the entry of the Final Order) in an amount up to (a) $2.3 million following entry of this Interim Order and prior to entry of the Final Order in accordance with the DIP Term Sheet, the Budget and this Interim Order, and (b) $2.6 million following entry of the Final Order in accordance with the DIP Loan Agreement, the DIP Loan Documents, the Budget and the Final Order. The Lender Parties shall have the discretion to establish reserves and liquidity blocks in the borrowing base in accordance with the DIP Term Sheet and the DIP Loan Agreement, including on account of the Carveout.

H.    Senior Liens. The Senior Liens (as defined in the DIP Term Sheet), but only to the extent such liens were, as of the Filing Date, valid, enforceable and not subject to

avoidance and only to the extent the claims in respect of such liens remain unpaid, shall not be primed by the liens securing the DIP Facility.

    I.  <u>Business Judgment and Good Faith</u>. The terms of the Postpetition Financing including the interest rates and fees applicable thereto, are at least as favorable to the Debtors as those available from alternative sources.  The terms of the Postpetition Financing have been negotiated in good faith and at arm's length between the Debtors and the Lender Parties, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are fair and reasonable under the circumstances, and are enforceable in accordance with applicable law.  The credit extended to the Debtors by the Lender Parties under the Postpetition Financing and this Interim Order shall be deemed to have been extended in "good faith" as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

    J.  <u>Need for Immediate Approval</u>. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules.  Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  The Debtors have no alternative source of financing to meet their immediate and projected obligations, including payroll and other operating expenses, and consequently, it is essential that the Court approve the interim financing contemplated hereby on an immediate basis.  Consummation of the Postpetition Financing and authorization of the use of the Prepetition Collateral (including Cash Collateral) in accordance

with the terms of this Interim Order are therefore in the best interests of the Debtors' estates, and are consistent with the Debtors' exercise of their fiduciary duties.

K.      Jurisdiction and Venue.   This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This Interim Order is entered in a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K) and (M).   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.   The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507(b) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014.

L.      Notice.   Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' twenty largest unsecured creditors on a consolidated basis; (c) counsel to the Existing Lender Parties; (d) counsel to the DIP Lender Parties; (e) Wells Fargo Bank, N.A.; (f) counsel to the Debtors' landlords; (g) all applicable health regulatory agencies and taxing authorities; (h) the United States Attorney's Office for the District of Delaware; (i) the Internal Revenue Service; and (j) all known parties that may be asserting a lien against the DIP Collateral (collectively, the "Notice Parties") (See D.I. 28).   The notice provided of the Motion and the Interim Hearing is sufficient and adequate notice and that no further notice of the relief sought at the Interim Hearing is necessary or required.

M.      Record.   The record adequately demonstrates the need for the Court to have conducted the Interim Hearing on the notice provided because of the potential for immediate and irreparable harm to the Debtors, their assets, businesses and estates. Based on the

record, pursuant to sections 105, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), notice of the Interim Hearing was adequate as set forth herein and on the record.

Based upon the foregoing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

### Approval and Authorization.

1. <u>Motion Granted</u>. The Motion is granted as to the Debtors' request for interim relief with respect to the Postpetition Financing to the extent provided herein. Any objections to the interim relief sought in the Motion with respect to the entry of this Interim Order that have not been previously withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2. <u>Approval of Documents</u>. The Postpetition Financing and the DIP Term Sheet are hereby approved subject to the terms of this Interim Order including the Interim Amount (including the assumed amount of the Existing Revolving Debt). The failure to reference or discuss any particular provision of the DIP Term Sheet shall not affect the validity or enforceability of any such provision.

3. <u>Authorization to Execute and Deliver Documents</u>. The Debtors are expressly authorized, empowered and directed to do and perform all acts to make, execute, deliver and implement the DIP Term Sheet and any other document required to be executed and delivered in connection therewith. Upon execution and delivery of the DIP Term Sheet, the DIP Term Sheet shall constitute valid, binding and non-avoidable obligations of the Debtors, enforceable against the Debtors in

12

accordance with the terms of this Interim Order and the DIP Term Sheet. No obligation, payment, transfer or grant of security under the DIP Term Sheet or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim. The Debtors are authorized and directed to pay all principal, interest, fees, costs and other expenses that may be required or necessary for the Debtors to perform all of their obligations under the DIP Term Sheet and this Interim Order without any further order or approval of the Court.

4. <u>Authorization to Borrow; the Budget</u>. Good and sufficient cause has been shown for the entry of this Interim Order. The Debtors are authorized and empowered to borrow funds pursuant to the DIP Term Sheet up to the Interim Amount pending the Final Hearing for the purposes permitted under the DIP Term Sheet and this Interim Order, all in accordance with the budget attached to this Interim Order as <u>Exhibit B</u> (the "<u>Budget</u>").

5. <u>Amendments</u>. The Lender Parties and the Debtors may amend, modify, supplement or waive any provision of the DIP Term Sheet if such amendment, modification, supplement or waiver is not

material (in the good faith judgment of the Lender Parties and the Debtor), without any need to apply to, or receive further approval from, the Court. Any material amendment, modification, supplement or waiver shall be in writing, signed by the parties and subject to approval by the Court on appropriate notice.

### Roll-Up of Prepetition Revolving Debt.

6.    Roll-Up of Prepetition Revolving Debt.  Subject to the effects of a Challenging Action as defined and described in paragraph 27 hereof, on the initial funding of the DIP Facility, all Existing Revolving `Debt shall be deemed to, and shall, constitute Lender Debt that is valid, binding, and enforceable against the Debtors as set forth in this Interim Order and the DIP Term Sheet.

### Use of Prepetition Collateral (Including Cash Collateral).

7.    Use of Prepetition Collateral (Including Cash Collateral).  The Debtors are authorized to use the Prepetition Collateral (including the Cash Collateral) during the period from the Filing Date until the occurrence and continuation of an Event of Default for the same purposes as set forth in and in accordance with this Interim Order, the DIP Term Sheet and the Budget.

### Payment of Lender Debt.

8.    Payment of Principal, Interest, Fees, Etc.  The Debtors shall pay to the Lender Parties principal and interest as provided in this Interim Order and the DIP Term Sheet in accordance with the procedures herein and therein set forth (and the Lender Parties shall be

permitted to charge such amounts to the DIP Facility).  In consideration of the financial and other accommodations to be made by the Lender Parties under this Interim Order and the DIP Term Sheet, the Debtors are hereby authorized and directed, without further order of the Court, to pay to the Lender Parties all fees and charges as set forth herein and in the DIP Term Sheet and to reimburse the Lender Parties for all reasonable out of pocket expenses and professional fees and related disbursements incurred by the Lender Parties in connection with the preparation of the DIP Term Sheet, the DIP Loan Agreement and the Loan Documents or in connection with or related to the Debtors, the Case or the DIP Facility; *provided* that the Lender Parties shall provide a copy of any invoices (redacted with respect to privileged matters) for their professional fees and expenses to counsel for the Debtors, counsel for the Official Committee of Unsecured Creditors, once appointed (the "Committee"), and the Office of the United States Trustee, and in absence of an objection filed with this Court within 10 days after receipt of such invoices, the Debtors are authorized and directed to pay the amount of such invoices.  In the event there is an objection filed with this Court within 10 days after receipt of such invoices, the Debtors are authorized and directed to pay only the portion of such invoices that are not subject to such objection, and shall pay any balance following resolution of such objection or upon an order of this Court.

**Superpriority Administrative Claim; Collateral.**

9.      Superpriority   Administrative   Expense   Claim;
Waiver under Section 506(c).  Subject to the Carveout, all of the Lender
Debt shall have the status of an allowed Superpriority Administrative
Expense Claim in the Case pursuant to section 364(c)(1) of the
Bankruptcy Code, having priority over any and all administrative
expenses, adequate protection claims and all other claims against the
Debtors, whether heretofore or hereafter incurred, of any kind or nature
whatsoever, including without limitation, all administrative expenses of
the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code,
and over any and all administrative expenses or other claims arising under
sections 105, 326, 328, 330, 331, 503(b), 506(c)(subject to entry of the
Final Order), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy
Code, whether or not such expenses or claims may become secured by a
judgment lien or other non-consensual lien, levy or attachment, which
allowed claims shall for purposes of section 1129(a)(9)(A) of the
Bankruptcy Code be considered administrative expenses allowed under
section 503(b) of the Bankruptcy Code.  No claim or expense having a
priority senior or *pari passu* to the priority granted to the Lender Parties in
this Interim Order shall be granted or permitted in the Case, or any
superseding chapter 7 case, and, subject to entry of the Final Order, no
other costs or expenses of administration of any kind, nature or description
whatsoever shall be imposed against the Collateral under sections 105,
506(c) or 552 of the Bankruptcy Code or otherwise (subject to entry of the

16

Final Order), in each case, while any portion of the Lender Debt remains outstanding.

10.    <u>Payment of Administrative Expenses</u>.    Unless an Event of Default shall have occurred (or would result from such payment), subject to the Budget, the Debtors shall be permitted to pay, as the same may become due or authorized and payable, administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code incurred in the ordinary course of their businesses.

11.    <u>Collateral Security</u>.    As security for the full and timely payment of the Lender Debt, the Lender Parties are hereby granted pursuant to section 364(c)(2), (3) and (d) of the Bankruptcy Code, liens on, and security interests in, all of the Collateral, subject only to the Carveout and the Senior Liens.    The term "<u>Collateral</u>" shall have the definition ascribed thereto in the DIP Term Sheet and includes all of the Debtors' assets including, without limitation, whether now existing or owned or hereafter arising or acquired, all receivables, all general intangibles and payment intangibles, contract rights, deposits and deposit accounts, goods, inventory, machinery and equipment, goodwill and investment property, membership rights, privileges and interests in any person, real property and leasehold interests, and all cash and non-cash proceeds of the foregoing.    Subject to entry of the Final Order, the term "<u>Collateral</u>" shall also include any and all causes of action of the Debtors

and their estate under sections 544, 545, 547, 548, 549, 550 and 724 of the Bankruptcy Code and any proceeds thereof ("Avoidance Actions").

12.   No Subordination.   The liens on, and security interests in, the Collateral granted to the Lender Parties under this Interim Order and pursuant to the DIP Loan Agreement and the Loan Documents shall not be subordinated to, or made *pari passu* with, any other lien or security interest, however and whenever arising, in the Case or any superseding chapter 7 case, other than the Carveout and the Senior Liens.

13.   Automatic Perfection of Liens.

(a)   The liens and security interests granted to the Lender Parties hereunder and under the DIP Term Sheet are valid, binding, continuing, enforceable and fully-perfected with the priorities herein and therein set forth.

(b)   The Lender Parties shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to validate or perfect the liens and security interests granted by or pursuant to this Interim Order and/or the DIP Term Sheet.

(c)   Should the Lender Parties, in their sole discretion, from time to time, choose to file such financing statements, mortgages, notices of lien or similar instruments, take possession of any Collateral securing the Lender Debt for perfection purposes, or take any other action to protect from infringement or otherwise validate or perfect any such security interest or lien, the Debtors and their officers are hereby directed to execute any such documents or instruments as the Lender Parties shall reasonably request, and all such documents and

instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

(d)    In the discretion of the Lender Parties, a certified copy of this Interim Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Interim Order for filing and recording, and such certified copy shall be deemed filed and recorded at the time and on the date of entry of this Interim Order.

### Carveout

14.    The liens, security interests, and Superpriority Administrative Expense Claims granted in favor of the Lender Parties in connection with the DIP Facility shall be subject to a carveout (the "Carveout") for (i) in the event of conversion of the Case to Chapter 7 of the Bankruptcy Code, payment of up to $20,000 of fees and expenses of a trustee appointed under section 702 of the Bankruptcy Code, (ii) the payment of all unpaid fees payable to the U.S. Trustee under 28 U.S.C. section 1930 in such amounts as determined in agreement with the U.S. Trustee or by a final order of the Court fees, (iii) the payment of all fees and expenses incurred during the Case in accordance with the Budget (without regard to any variance permitted by the DIP Term Sheet) prior to the occurrence of an Event of Default (as defined below) under the DIP Facility, but that remain unpaid as of such date, of professionals retained by the Debtors, professionals retained by the Committee, and any patient

care ombudsman appointed in the Case (collectively, the "Professional Fees") in an amount not to exceed (a) $250,000 prior to the entry of the Final Order and (b) $500,000 following entry of the Final Order, and (iv) an amount up to $150,000 for the payment of Professional Fees incurred from and after the occurrence of an Event of Default under the DIP Facility following entry of the Final Order. So long as no Event of Default shall have occurred and be continuing, the Carveout shall not be reduced by the payment of Professional Fees in accordance with and subject to the Budget. Other than the Carveout, the DIP Facility shall not otherwise be subject to any carveout for Professional Fees.

**Limitation on Governmental Offset and Other Rights.**

15.     [Reserved].

**Termination.**

16.     Termination.    Notwithstanding the provisions of section 362 of the Bankruptcy Code and without order of or application or motion to the Court, subject to any applicable grace or cure period expressly set forth in the DIP Term Sheet, in the event of (a) the failure of the Debtors to perform any of their material obligations under this Interim Order, or (b) the occurrence and continuance of an Event of Default, then and upon the occurrence of either of the foregoing (each a "Termination Event"), and at all times during the continuance thereof, the Lender Parties may upon not less than five (5) days prior written notice to the Debtors and their counsel, the Office of the United States Trustee, and counsel for the Committee(s) (and prior to its appointment, the Debtors' twenty

largest unsecured creditors on a consolidated basis) exercise any and all rights and remedies allowed under this Interim Order, the DIP Term Sheet and/or applicable law; *provided*, *however*, that notwithstanding the foregoing and section 362 of the Bankruptcy Code, and without order of or application or motion to the Court, if a Termination Event exists, the Lender Parties may do one or more of the following at any time and in any order: (i) reduce the amount of the borrowing base used in computing availability under the DIP Facility, (ii) restrict the amount of or refuse to make revolving loans or advances under the DIP Facility or terminate or reduce the Lender Parties' commitment to lend under the DIP Facility, (iii) continue to apply collections on receivables and other Collateral to the Lender Debt, and/or (iv) declare the Lender Debt to be immediately due and payable. The Lender Parties' failure to exercise rights under this paragraph shall not constitute a waiver of any of their rights. At any hearing following a Termination Event, the Debtors shall be permitted to contest whether a Termination Event has occurred and is then continuing but may not seek any relief that would in any way restrict or impair the rights and remedies of the Lender Parties set forth in this Interim Order, the DIP Term Sheet and/or applicable law.

17. <u>Maturity Date</u>. In addition to any rights and remedies of the Lender Parties under the terms of this Interim Order, the DIP Facility shall immediately and automatically terminate and the Lender Debt shall be immediately due and payable upon the Maturity Date.

**Adequate Protection for the Existing Term Lender Parties.**

18.    Adequate Protection Liens.  As adequate protection for the granting of liens to secure the DIP Facility and the Debtors' use of the Prepetition Collateral including the Cash Collateral, to the extent of any diminution in value (if any) of the Existing Term Lender Parties' liens (if any) in the Collateral following the Filing Date, the Existing Term Lender Parties are granted replacement liens (the "Adequate Protection Liens") in all Collateral.  The Adequate Protection Liens shall be subject to the Carveout and shall be junior in priority to the Senior Liens and the liens of the Lender Parties securing the Lender Debt and senior to all other liens.

19.    Interest, Fees and Expenses.  As adequate protection for the granting of liens to secure the DIP Facility and the Debtors' use of the Prepetition Collateral including the Cash Collateral, (a) interest on the Existing Term Debt shall accrue during the Case at the default rate set forth in the Existing Loan Agreement (presently at 11.25%), and (b) the Debtors shall pay all reasonable out of pocket expenses and professional fees and related disbursements incurred by the Existing Term Lender Parties in connection with the Debtors or the Case in accordance with the invoice, review and payment procedure set forth in paragraph 8 hereof.

20.    No Filing Required.  The Existing Term Lender Parties shall not be required to file any financing statements, mortgages,

22

notices of lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to validate or perfect the Adequate Protection Liens granted by or pursuant to this Interim Order.    The Existing Term Lender Parties shall have no right to seek or exercise any rights or remedies in respect of the Adequate Protection Liens unless the Lender Parties have consented thereto or the Lender Debt has been indefeasibly paid and satisfied in full accordance with the DIP Term Sheet and this Interim Order.

21.    Superpriority Administrative Expense Claim; Waiver under Section 506(c).    In accordance with section 507(b) of the Bankruptcy Code, the amount of any diminution in value (if any) of the Existing Term Lender Parties' liens in the Collateral following the Filing Date shall have the status of an allowed Superpriority Administrative Expense Claim in the Cases pursuant to section 364(c)(1) of the Bankruptcy Code, having priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, whether heretofore or hereafter incurred, of any kind or nature whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c)(subject to entry of the Final Order), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a

judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, subject and junior only to the Lender Parties' Superpriority Administrative Expense Claim and the Carveout.  Except for the Lender Parties' Superpriority Administrative Expense Claim and the Carveout, (i) no claim or expense having a priority senior or *pari passu* to the priority granted to the Existing Term Lender Parties in this Interim Order shall be granted or permitted in the Case, or any superseding chapter 7 case, and (ii) subject to entry of the Final Order, no other costs or expenses of administration of any kind, nature or description whatsoever shall be imposed against the Collateral under sections 105, 506(c), or 552 of the Bankruptcy Code or otherwise (subject to entry of the Final Order), in each case, while any portion of the Existing Term Debt remains outstanding.

**Miscellaneous Provisions.**

22.    Reporting Requirements.  The Debtors are obligated to allow access to the Lender Parties, the Existing Term Lender Parties and their respective representatives and to provide information with respect to and otherwise comply with the reporting and disclosure undertakings and agreements set forth in this Interim Order and the DIP Term Sheet and such obligations shall continue until the indefeasible payment in full of all Lender Debt and the Existing Term Debt and the

24

Lender Parties' commitment to loan money to the Debtors under the DIP Loan Agreement is terminated.

23.     Collection and Deposit Accounts.   In accordance with the Order granting the Debtors' motion to maintain their cash management system [D.I. 6] Wells Fargo Bank, National Association ("Wells Fargo") shall continue to comply with its obligations under the collection account agreements and deposit account control agreements among Wells Fargo, the respective Debtor, and the Existing Lender Parties and shall transfer all collections and proceeds of accounts receivable deposited in the accounts governed by such agreements in accordance with the terms of such agreements to the Agent, in accordance with the written instructions provided by the Agent to Wells Fargo.

24.     Binding Effect of Order; Successors and Assigns. The DIP Term Sheet and this Interim Order shall be binding upon all parties-in-interests in the Case, including without limitation, the Lender Parties, the Existing Term Lender Parties, the Committee and the Debtors and their respective successors and assigns, including, without limitation, any chapter 11 trustee or chapter 7 trustee or similar responsible person hereafter appointed as a representative of the Debtors' estates and any such successors or assigns, without further order of this Court and shall inure to the benefit of the Lender Parties, the Existing Term Lender Parties, the Committee and the Debtors and their respective successors and assigns.  The Debtors and their successors and assigns shall be deemed

authorized and directed to comply with the provisions of this Interim Order and the DIP Term Sheet. The Lender Parties shall not have any obligation to extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

25.     No Impairment of Liens and Order.   The liens, security interests, Superpriority Administrative Expense Claims, Lender Debt and other rights and remedies granted to the Lender Parties under this Interim Order and the DIP Term Sheet, and the Adequate Protection Liens and other rights herein granted to the Existing Term Lender Parties, and any actions taken pursuant hereto or thereto shall survive, and shall not be modified, altered or impaired in any manner by (a) any other financing or extension of credit or incurrence of debt by the Debtors (under section 364 of the Bankruptcy Code or otherwise), (b) the entry of an order confirming any plan of reorganization, (c) the entry of an order converting the Case to chapter 7 or dismissing the Case, or (d) the maturity of the Lender Debt. The liens, security interests, claims and any other rights granted to the Lender Parties and the Existing Term Lender Parties pursuant to this Interim Order and the DIP Term Sheet shall continue in effect until (i) in the case of the Lender Parties, the Lender Debt is indefeasibly satisfied and paid, and the Lender Parties' commitment to make loans under the DIP Facility has terminated, and (ii)

in case of the Existing Term Lender Parties, the Existing Term Lender Debt is indefeasibly satisfied and paid.

26.    <u>Good Faith</u>.  Having been found to be extending the Postpetition Financing to the Debtors in good faith, the Lender Parties are entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the Lender Debt and the Superpriority Administrative Expense Claims and liens created or authorized by this Interim Order in the event that this Interim Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal.  If any provision of this Interim Order is hereafter modified, vacated, reversed or stayed by subsequent order of this or any other court for any reason, such modification, vacation, reversal or stay shall not affect the validity, enforceability and priority of any of the Lender Debt or the claims, liens and security interests granted to the Lender Parties under this Interim Order and/or the DIP Term Sheet, and the validity, enforceability or priority of the Lender Debt and the claims, liens and security interests of the Lender Parties shall be governed in all respects by the original provisions of this Interim Order, and the Lender Parties shall be entitled to all of the rights, privileges and benefits granted herein, including, without limitation, the liens, security interests and priorities granted to the Lender Parties in this Interim Order with respect to all Lender Debt.

27.    <u>Challenges in Respect of Existing Debt</u>.    The Debtors agreed to waive the right to challenge the validity, enforceability,

perfection and priority of the Existing Debt and the Existing Lender Parties' security interest and liens on the Prepetition Collateral. Each other party, including the Committee or any trustee appointed before the Challenge Deadline (as defined below), shall have waived any right to challenge the validity, enforceability, perfection and priority of the Existing Debt and the Existing Lender Parties' security interest and liens on the Prepetition Collateral, unless that party commences in the Court an adversary proceeding challenging such validity, enforceability, perfection and/or priority (a "Challenging Action") on or before 75 days after the entry of this Interim Order (or in the case of the Committee 60 days after the appointment of the Committee) (the "Challenge Deadline"). With respect to any trustee appointed before the expiration of the Challenge Deadline, the Court may extend such Challenge Deadline upon request by such trustee for cause shown. The Existing Debt and the Existing Lender Parties' security interest and liens on the Prepetition Collateral shall be deemed, as against any party in interest that does not file a Challenging Action on or before the Challenge Deadline, to be legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable. If no Challenging Action is commenced on or before the Challenge Deadline or, in the event one or more Challenging Actions is commenced on or before the Challenge Deadline and such Challenging Actions are dismissed, then the Existing Debt and the Existing Lender Parties' security interest and liens on the

Prepetition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates or otherwise, including without limitation, any successor thereto. None of the advances under the DIP Facility or the Carve-Out Reserve may be used to prosecute actions, claims, demands or causes of action against the Lender Parties or the Existing Lender Parties or to object to or contest in any manner, or to raise any defense in any pleading to the validity, perfection, priority or enforceability of the Existing Debt or the Existing Lender Parties' liens and security interests in the Prepetition Collateral, the liens and security interests granted to the Lender Parties hereunder, or the Lender Debt, including in respect of a Challenging Action; *provided, however,* up to an aggregate of $25,000 of the Prepetition Collateral including the Cash Collateral, advances under the DIP Facility, or the Carveout may be used by the Committee (if any) to investigate the validity, enforceability, perfection and priority of the Existing Debt and the Existing Lender Parties' security interests and liens on the Prepetition Collateral.

28.    <u>No Third Party Beneficiaries</u>.    Other than as expressly set forth herein, no rights are created hereunder for the benefit of any third party, or any direct, indirect or incidental beneficiary.

29.    <u>No Marshaling</u>.  In no event shall the Lender Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

30.    <u>Limitations under Section 552(b) of the Bankruptcy Code</u>. Subject to entry of the Final Order, the Lender Parties and the Existing Lender Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and no expenses of administration of the Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the Collateral under section 552(b) of the Bankruptcy Code.

31.    <u>No Waiver</u>. Any Lender Party's delay or failure to exercise rights and remedies under the DIP Term Sheet or this Interim Order shall not constitute a waiver of the Lender Party's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Term Sheet and this Interim Order.

32.    <u>Payments Free and Clear</u>. Subject to paragraph 27 hereof, any and all payments or proceeds remitted to the Lender Parties or the Existing Term Lender Parties pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code (subject to entry of the Final Order).

30

33.     <u>Insurance</u>.  The Lender Parties are deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies to the payment in full of the Lender Debt, subject as applicable to the Senior Liens.

34.     <u>Automatic Stay</u>.  The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Lender Parties and the Existing Term Lender Parties to take any action authorized or contemplated by this Interim Order or the DIP Term Sheet and to carry out the terms thereof, subject, however, to the satisfaction of any notice, procedural and other conditions contained in this Interim Order, and/or the DIP Term Sheet.

35.     <u>No Control</u>.  Subject to entry of the Final Order, by consenting to this Interim Order, by making advances, loans or extending financial accommodations of any type, kind or nature under this Interim Order or by administering the loans made hereunder, none of the Lender Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtors.

31

36.   <u>Indemnification</u>.   Subject to the entry of the Final Order, nothing in this Interim Order or the DIP Term Sheet shall in any way be construed or interpreted to impose or allow the imposition upon the Lender Parties or the Existing Term Lender Parties, any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.   So long as the Lender Parties and the Existing Term Lender Parties comply with their respective obligations under this Interim Order and the DIP Term Sheet and their obligations under applicable law (including the Bankruptcy Code), (a) the Lender Parties and the Existing Term Lender Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtors.

37.   <u>Inconsistency</u>.   In the event of any inconsistency between this Interim Order and the DIP Term Sheet, the Existing Loan Agreement, any document or any other agreement heretofore or hereafter entered into by and between the Debtors and the Lender Parties and/or the Existing Term Lender Parties, the terms of this Interim Order shall govern and control.

38. <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

39. <u>Immediate Docketing of Order</u>.  The Clerk of the Court is hereby directed to forthwith enter this Interim Order on the docket of this Court maintained in regard to the Cases.

40. <u>Effectiveness</u>.  In accordance with Rule 7052, this Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

41. <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

42. <u>Notice of Final Hearing; Objections</u>.  The Debtors shall, on or before February 28, 2014 transmit copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order and

a copy of the Motion, to the parties having been given notice of the Interim Hearing, to any party which has filed prior to such date a request for notices with this Court and to counsel for the Committee, once appointed. The notice of entry of this Interim Order shall state that any party in interest objecting to the Postpetition Financing on a final basis and the entry of the Final Order shall file written objections with the Clerk of the United States Bankruptcy Court for the District of Delaware no later than 4:00 p.m. (prevailing Eastern Time) on March 7, 2014 and shall serve such objections so that the same are received on or before such date by: (a) DLA Piper US LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn: Thomas R. Califano, Esq., and 1201 N. Market Street, Suite 2100, Wilmington, Delaware 19801, Attn: Stuart M. Brown, Esq., counsel for the Debtors; (b) Alvarez & Marsal Healthcare Industry Group, LLC, 100 Pine Street, Suite 900, San Francisco, California 94111, Attn: George D. Pillari; (c) Kaye Scholer LLP, 425 Park Avenue, New York, NY 10022, Attn: Benjamin Mintz, Esq. and Marc Rosenberg, Esq., and Young Conaway Stargatt & Taylor LLP, P.O. Box 391, 100 North King Street, Wilmington, DE 19801, Attn: Robert S. Brady, Esq., co-counsel for the Lender Parties; and (d) the Office of the United States Trustee for the District of Delaware.

34

43.    <u>Final Hearing</u>.  The Final Hearing will be held on March 12, 2014 at 4:30 p.m. (prevailing Eastern Time).

Dated:    Wilmington, Delaware
          February 27, 2014

HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE