## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
:
In re: : Chapter 11
:
RESTORA HEALTHCARE HOLDINGS, LLC, : Case No. 14-10367 (PJW)
*et al.*,[1] :
: (Jointly Administered)
:
Debtors. :
: **Hearing Date: 10/16/2014 at 9:30 a.m. (ET)**
: **Objection Deadline: 9/30/2014 at 4:00 p.m. (ET)**
-------------------------------------------------------------x

## DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a) AND 1112(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 1017(a) DISMISSING THESE CHAPTER 11 CASES AND GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this motion (this "Motion") for entry of an order, pursuant to sections 105(a) and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rule 1017(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), dismissing the Debtors' chapter 11 cases and granting certain related relief.  In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.    This Court has jurisdiction over the Debtors, their estates, and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Restora Healthcare Holdings, LLC (2837); Restora Hospital of Mesa, LLC (8773); and Restora Hospital of Sun City, LLC (1028).  The mailing address for the Debtors, solely for purposes of notices and communications, is c/o Alvarez & Marsal Healthcare Industry Group, LLC, 100 Pine Street, Suite 900, San Francisco, CA 94111 (Attn: George D. Pillari).

statutory predicates for the relief requested herein are sections 105(a) and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017(a).

<b><u>BACKGROUND</u></b>

**A.     General Background.**

2.      On February 24, 2014 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.  The Debtors are continuing as debtors in possession in these cases pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  On March 6, 2014, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "<u>Committee</u>") in these cases.

4.      Prior to the sale of substantially all of their assets, discussed in more detail below, the Debtors operated two long-term acute care (LTAC) hospitals and skilled nursing facilities in the Greater Phoenix area.

**B.     Postpetition Financing and Sale of Substantially All of the Debtors' Assets.**

5.      On March 21, 2014, this Court entered an order authorizing the Debtors to, among other things, obtain postpetition financing up to a maximum principal amount outstanding of $7 million pursuant to the terms of a Debtor-in-Possession Financing Term Sheet between the Debtors and Healthcare Finance Group, LLC ("<u>HFG</u>"), as lender and administrative agent.

6.      On February 25, 2014, the Debtors filed a motion seeking, among other things, entry of orders (a) authorizing and approving certain auction and bidding procedures in connection with the sale of substantially all of the Debtors' assets, (b) approving the Debtors' entry into a stalking horse asset purchase agreement, subject to higher and better offers,

(c) authorizing and approving the sale of substantially all of the Debtors' assets free and clear of all liens, claims, encumbrances, and interests, (d) authorizing the assumption and assignment of certain executory contracts and unexpired leases, and (e) granting related relief.

7.      On March 21, 2014, this Court entered an order, among other things, (a) authorizing and approving certain auction and bidding procedures in connection with the sale of substantially all of the Debtors' assets, and (b) approving the Debtors' entry into a stalking horse asset purchase agreement, subject to higher and better offers.

8.      On April 25, 2014, this Court entered an order (the "Sale Order") authorizing and approving the sale of substantially all of the Debtors' assets to PHX Hospital Partners, LLC (together with its affiliates, the "Purchaser") pursuant to the terms of an Asset Purchase Agreement (the "APA") by and between the Debtors and the Purchaser.

9.      The APA provides for the sale of substantially all of the Debtors' assets to the Purchaser for a purchase price of $5 million, which was payable in the form of a credit bid under section 363(k) of the Bankruptcy Code with respect to a portion of the aggregate secured obligations owing under the Debtors' prepetition and postpetition financing facilities.   The Purchaser also assumed various liabilities of the Debtors, including obligations under certain executory contracts and unexpired leases that were assigned to the Purchaser in connection with the sale transaction.   The Debtors, however, did not receive any cash consideration in connection with the sale.

10.      The Debtors and the Purchaser consummated the sale transaction on June 27, 2014, at which time substantially all of the Debtors' assets were transferred to the Purchaser. Following closing of the sale transaction, the Debtors no longer operate the hospital facilities and are no longer responsible for patient care at the facilities.

C.    **Post-Sale Wind-Down.**

11.    Following consummation of the sale transaction, the only remaining assets of the Debtors were certain funds provided under the Debtors' postpetition revolving loan facility with HFG, a portion of which have been used by the Debtors for the payment of administrative expense claims that have arisen in the ordinary course of business during these chapter 11 cases.

12.    The Debtors' remaining assets now consist of funds held in an operating account (the "Wind-Down Account") to be used for the payment of wind-down expenses and administrative claims (the "Wind-Down Funds"), with a portion of such funds earmarked for the payment of unpaid allowed fees and expenses of professionals retained by the Debtors and Committee in these cases for the period from the Petition Date through June 30, 2014 (the "Professional Fee Funds").  As of August 20, 2014, an aggregate amount of $509,793 was on deposit in the Wind-Down Account, and $223,372 of such amount is earmarked as Professional Fee Funds.  The Wind-Down Account is controlled by the Debtors' Chief Restructuring Officer, Mr. George Pillari.

13.    The Debtors filed a notice with the Court contemporaneously herewith scheduling a hearing on final fee applications of professionals for the omnibus hearing on October 16, 2014 (the "Hearing Date"), and this Motion is also scheduled to be heard on the Hearing Date.

14.    The Debtors have been paying administrative liabilities incurred during these chapter 11 cases, including quarterly fees of the United States Trustee, as they have come due. In addition, the Debtors contemplate that all non-professional fee administrative expense liabilities will be paid in full prior to the Hearing Date from funds in the Wind-Down Account (other than the Professional Fee Funds), and the unpaid portion of allowed professional fee

- 4 -

claims will be paid as soon as practicable after the Hearing Date from the Professional Fee Funds.

15.     Based on interim fee applications and monthly fee statements submitted by professionals thus far in these cases, the Debtors do not anticipate that the Professional Fee Funds will be sufficient to pay all allowed professional fee claims in full.  The Debtors' professionals and the Committee's professionals have agreed that the Professional Fee Funds shall be distributed *pro rata* with respect to allowed fees and expenses of the Debtors' and Committee's professionals incurred during these chapter 11 cases through and including June 30, 2014.  Any allowed and unpaid fees and expenses of the Debtors' professionals incurred during these cases from July 1, 2014 through the Dismissal Effective Date (as defined below) shall be paid together with other administrative expense claims and wind-down expenses from the other Wind-Down Funds.[2]

16.     Any funds remaining in the Wind-Down Account after the Hearing Date will be used to pay miscellaneous wind-down expenses that may arise after the Hearing Date and after dismissal of these cases, such as fees for the preparation of final tax returns and to dissolve the Debtors, with any balance remaining in the Wind-Down Account after payment in full of all such wind-down expenses to be used to pay any remaining unpaid portion of allowed professional fee claims *pro rata* based on the allowed fees and expenses of the Debtors' and Committee's professionals incurred during these chapter 11 cases through June 30, 2014.

---

[2]     The Committee's professionals have agreed that they will be deemed to have no allowed fees and expenses for the month of June 2014.  The Debtors' professionals understood that the Committee's professionals also agreed that the Committee's professionals would be deemed to have no allowed fees and expenses for the period from July 1, 2014 through the Dismissal Effective Date; however, the Committee's professionals now dispute this understanding.  The parties are continuing to discuss this issue.  In addition, the Debtors are continuing to review certain disclosure issues in connection with the Committee's retention of CohnReznick LLP as financial advisor and reserve all rights in connection therewith.

## RELIEF REQUESTED

17.    By this Motion, the Debtors respectfully request that the Court enter an order, pursuant to sections 105(a) and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017(a), (a) dismissing each of the Debtors' chapter 11 cases effective as of October 23, 2014 (the "Dismissal Effective Date"), and (b) granting related relief.[3]

## BASIS FOR RELIEF REQUESTED

### A.    Cause Exists to Dismiss the Debtors' Bankruptcy Cases.

18.    Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested . . . dismissal is not in the best interests of creditors and the estate, the court shall . . . dismiss a case under [chapter 11 of the Bankruptcy Code] . . . if the movant establishes cause." 11 U.S.C. § 1112(b)(1).

19.    The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 changed the statutory language with respect to conversion and dismissal from permissive to mandatory.[4] *See* H.R. Rep. 109-31(I), 2005 U.S.C.C.A.N. 88, 94 (BAPCPA "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances."). Accordingly, the Court's

---

[3]    Alternatively, the Debtors seek dismissal of these chapter 11 cases under section 305(a) of the Bankruptcy Code, which provides, in relevant part, that "[t]he court, after notice and a hearing, may dismiss a case under [chapter 11 of the Bankruptcy Code] . . . at any time if - (1) the interests of creditors and the debtor would be better served by such dismissal." 11 U.S.C. § 305(a)(1). As set forth more fully herein, the dismissal of the Debtors' chapter 11 cases is in the best interests of the Debtors, their estates, and creditors. Accordingly, the Debtors respectfully submit that the dismissal of these cases is also warranted under section 305(a) of the Bankruptcy Code.

[4]    Prior to BAPCPA, a bankruptcy court had wide discretion to use its equitable powers to dispose of a debtor's case, but was not required to dismiss a case if cause was shown. *See Small Bus. Admin. v. Preferred Door Co. (In re Preferred Door Co.)*, 990 F.2d 547, 549 (10th Cir. 1993) (a court has broad discretion to dismiss a bankruptcy case); *In re Nugelt, Inc.*, 142 B.R. 661, 665 (Bankr. D. Del. 1992) (stating that "[c]ourts have wide latitude in determining whether cause exists to convert or dismiss" a chapter 11 bankruptcy case).

EAST\79407163.1

discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause is significantly limited. *See In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4)."); *In re 3 Ram, Inc.*, 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006) ("Under new § 1112 when cause is found, the court shall dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate.").

20.     Section 1112(b)(4) of the Bankruptcy Code identifies certain examples of "cause" for dismissal of a chapter 11 case. *See* 11 U.S.C. § 1112(b)(4). A bankruptcy court, however, is not constrained by those enumerated examples and may find "cause" based on the facts and circumstances of the particular chapter 11 case. *See In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007) ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'") (quoting *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991)).

21.     One enumerated ground for dismissal is where a party in interest shows that there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). Under this ground, the Debtors must first demonstrate a diminution in value of the estates. *See, e.g., In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) (finding that the accumulation of taxes impaired the value of the estate). Second, the Debtors must demonstrate that they have no "reasonable likelihood of rehabilitation." *See, e.g., In re Wright Air Lines, Inc.*, 51 B.R. 96, 100 (Bankr. N.D.

EAST\79407163.1

Ohio 1985) ("Rehabilitation as used in 11 U.S.C. Section 1112(b)(1) means 'to put back in good condition; re-establish on a firm, sound basis'").

22.     Here, the Debtors easily satisfy the two-fold inquiry, and submit that sufficient cause exists for the dismissal of their chapter 11 cases.  Since the Petition Date, the Debtors have preserved and maximized the value of their estates for the benefit of creditors.  In furtherance of this goal, the Debtors sold substantially all of their assets to the Purchaser.  In connection with the sale, the Purchaser assumed substantially all of the Debtors' operating liabilities and took an assignment of many of the Debtors' executory contracts and unexpired leases.  The Debtors have terminated their business operations, disposed of substantially all of their assets through these cases, and have no remaining assets that could be used for any purpose other than the payment of remaining administrative expenses and wind-down costs.

23.     The Debtors' estates are facing continuing losses as administrative claims, including U.S. Trustee fees and professional fees, continue to accrue each day the chapter 11 cases remain open.  In addition, there is no reasonable likelihood of rehabilitation, and the Debtors are unable to effectuate a chapter 11 plan of liquidation as there are insufficient funds available to fund the operation of a liquidation trust.  Also, the Debtors do not believe they have any valuable causes of action that would result in any meaningful recoveries for the benefit of general unsecured creditors.  The Debtors believe there is little to no prospect for distributions to general unsecured creditors, aside from those liabilities that the Purchaser has assumed in connection with the sale transaction.  In addition, all or substantially all of the Debtors' employees have been employed by the Purchaser.

24.     Because they have no remaining assets to administer, the Debtors submit that conversion of their chapter 11 cases to cases under chapter 7 of the Bankruptcy Code would only

create additional unnecessary administrative expenses, without enhancing the prospect for recoveries. Therefore, conversion is unwarranted. Dismissal of these chapter 11 cases, on the other hand, will eliminate the accrual of any administrative expense obligations and bring closure to these cases in a timely and efficient manner.

25.    Courts in this district have dismissed cases pursuant to section 1112(b) of the Bankruptcy Code under similar circumstances where the debtor lacks sufficient funds to confirm a chapter 11 plan and/or where the costs associated with plan confirmation would eliminate the possibility of a meaningful creditor recovery. *See*, *e.g.*, *In re Mail Sys. Liquidation, Inc.*, Case No. 11-11187 (PJW) (Bankr. D. Del. Mar. 21, 2012); *In re G.I. Joe's Holding Corp.*, Case No. 09-10713 (KG) (Bankr. D. Del. Mar. 10, 2011); *In re CFM U.S. Corp.*, Case No. 08-10668 (KJC) (Bankr. D. Del. Feb. 1, 2010); *In re Foamex Int'l Inc.*, Case No. 09-10560 (KJC) (Bankr. D. Del. Jan. 20, 2010); *In re Alternative Distribution Sys., Inc.*, Case No. 09-13099 (PJW) (Bankr. D. Del. Dec. 1, 2009); *In re KB Toys, Inc.*, Case No. 08-13269 (KJC) (Bankr. D. Del. Dec. 1, 2009); *In re Wickes Holdings, LLC*, Case No. 08-10212 (KJC) (Bankr. D. Del. May 11, 2009); *In re New Weathervane Retail Corp.*, Case No. 04-11649 (PJW) (Bankr. D. Del. Sept. 4, 2005).

26.    Accordingly, the Debtors submit that sufficient cause exists to dismiss each of these chapter 11 cases effective as of the Dismissal Effective Date, and that doing so is in the best interests of the Debtors' estates and creditors.

## **NOTICE**

27.    Notice of this Motion will be provided to (a) the Office of the United States Trustee, (b) counsel to the Committee, (c) counsel to HFG, (d) counsel to the Purchaser, (e) all creditors of the Debtors, and (f) those parties requesting notice pursuant to Bankruptcy Rule

2002.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice of this Motion is required.

**NO PRIOR REQUEST**

28.     No prior request for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request that Court enter an order, substantially in the form attached hereto as Exhibit A, dismissing each of the Debtors' chapter 11 cases effective as of the Dismissal Effective Date and granting such other and further relief as this Court deems just and proper.

Dated: August 25, 2014  
       Wilmington, Delaware

**DLA PIPER LLP (US)**

/s/ Stuart M. Brown  
Stuart M. Brown (DE 4050)  
Daniel N. Brogan (DE 5723)  
1201 N. Market Street, Suite 2100  
Wilmington, DE 19801  
Telephone: (302) 468-5700  
Facsimile: (302) 394-2341  
Email:     Stuart.Brown@dlapiper.com  
            Daniel.Brogan@dlapiper.com

-and-

Thomas R. Califano (admitted *pro hac vice*)  
Daniel G. Egan (admitted *pro hac vice*)  
1251 Avenue of the Americas  
New York, New York  10020  
Telephone: (212) 335-4500  
Facsimile: (212) 335-4501  
Email:  Thomas.Califano@dlapiper.com  
        Daniel.Egan@dlapiper.com

*Attorneys for the Debtors and*  
*Debtors in Possession*